M. Barbara CHRISTMAN, Joseph Forte, Janet M. Toolson, John Archbold, and Ben O. Carroll on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BRAUVIN REALTY ADVISORS, INC., Brauvin Realty Advisors II, Inc., Brauvin Realty Advisors III, Inc., Brauvin Realty Advisors IV, Inc., Corporate General Partners; Jerome J. Brault; Brauvin Real Estate Funds, LLC, Defendants.

No. 96 C 6025.

United States District Court, N.D. Illinois. Eastern Division.

Aug. 11, 1998.

John Michael Murphy, Baker & McKenzie, Ronald L. Futterman, Michael I Behn, Futterman & Howard, Chtd., Thomas Vincent Canepa, John J. Cummins, Canepa & Cummins, Chicago, IL, Robert W. Mills, Richard S. Kohn, Gilmur R. Murray, Alex J. Lucenitser, The Mills Firm, Derek G. Howard, The Mills Law Firm, Greenbrae, CA, Larry Daniel Drury, Larry D. Drury, Ltd., Chicago, IL, for M. Barbara Christman, Janet M. Toolson, John Archbold, Ben O Carroll.

Robert Walter Tarun, John Alton Cashman, Winston & Strawn, Mark L. Karasik, Donald J. Hayden, Thomas Anthony Doyle, John Michael Murphy, William Lynch Schaller, Baker & McKenzie, Chicago, IL, for Brauvin Realty Advisors, Inc., Brauvin Realty Advisors, II, Inc., Brauvin Realty Advisors, III, Inc., Brauvin Realty Advisors IV, Inc.

Mark L. Karasik, Donald J. Hayden, Thomas Anthony Doyle, John Michael Murphy, William Lynch Schaller, Baker & McKenzie, Chicago, IL, for Corporate General Partners, Jerome J Brault.

Sheryl Lynn Jaffee, Jeffrey H. Frank, Patzik, Frank & Samotny, Ltd., Chicago, IL, James T. Rohlfing, Friedman, Sinar & Rohlfing, Chicago, IL, for Brauvin Real Estate Funds, LLC.

## MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District Judge.

In this action, the plaintiffs are limited partners challenging a proposed transaction in which the assets of four limited partnerships would be acquired through sale or merger by Brauvin Real Estate Funds, L.L.C. ("Brauvin LLC"). Brauvin LLC is owned by Jerome J. Brault, who is also the managing general partner of the limited partnerships. The limited partnerships are Brauvin High Yield Fund L.P., Brauvin High Yield Fund L.P. II, Brauvin High Yield Fund L.P. III, and Brauvin Corporate Lease Program IV L.P. (collectively "the Brauvin partnerships"). The

defendants in this action are the corporate general partner of each partnership; Jerome J. Brault, the managing general partner of the partnerships; and Brauvin LLC, the purchaser.[1] This opinion addresses only (1) plaintiffs' motion for partial summary judgment that the proxy voting procedure used by the defendants to obtain approval for the proposed transaction was invalid and (2) defendants' cross-motion that the procedure was valid. For the reasons set forth below, plaintiffs' motion for partial summary judgment is granted and defendants' motion for summary judgment is denied.

## BACKGROUND

The plaintiffs, suing on behalf of a class consisting of all limited partners, have asserted fourteen counts in their Second Amended and Supplemental Complaint. The complaint alleges that the defendants breached their fiduciary duties, breached numerous terms of the partnership agreements, breached the covenant of good faith and fair dealing, violated the Illinois consumer fraud statute, violated federal and Illinois securities laws, and violated the Delaware limited partnership statute.

As noted above, Brauvin LLC, the entity seeking to acquire the assets of the Brauvin partnerships, is owned by the managing general partner of the limited partnerships, Jerome J. Brault. The partnership agreements prohibit the general partners from engaging in self-dealing transactions. In order to consummate the proposed transaction, the general partners called for a meeting at which the limited partners could vote to amend the partnership agreement to permit self-dealing transactions and, simultaneously, to approve the proposed transaction with Brauvin LLC.

On August 23, 1996, the general partners sent proxy solicitation materials to the limited partners of the Brauvin partnerships. The proxy materials informed the limited partners of the proposed trans-

action and advised the limited partners that a meeting would be held on September 24, 1996 for the purpose of voting on the proposed transaction. The limited partners bringing this action maintain that these (and subsequent materials) were misleading because, among other things, they did not clearly identify Brault's interest in the transaction. The proxy materials included a proxy card, which, when signed by the limited partner, would allow the limited partner to vote on the proposed transaction without personally attending the September 24 meeting. Pursuant to this court's order, the meeting was postponed to October 9, 1996. On September 27, 1996, counsel for the plaintiffs sent a letter to all of the limited partners, urging them to revoke proxies granted to the limited partners.

On October 2, 1996, this court denied the plaintiffs' motion for a preliminary injunction to enjoin the meeting. On October 11, 1996, this court denied defendants' motion for a preliminary injunction, in which the defendants sought to invalidate the proxy revocations obtained as a result of the September 27, 1996 letter by plaintiffs' counsel. After the general partners postponed the meeting several times, the meeting was held on November 8, 1996 and the proposed transaction was approved by a vote of the limited partners. On May 1, 1997, this court denied plaintiffs' motion to enjoin the proposed transaction. The court also denied in large part defendants' motion to dismiss.

The proposed transaction has not been consummated. On January 28, 1998, this court referred this matter to a Special Master to recommend procedures for the disposition of the assets of the limited partnerships and to attempt to settle this litigation. In his August 4, 1998 Report and Recommendation to this court, the Special Master indicated that a decision on the cross-motions for summary judgment

---

1. In addition, some individual plaintiffs, represented by counsel different from counsel for the plaintiffs' class, have participated in the briefing of the cross motions for summary judgment. These individual plaintiffs will be referred to in this opinion as "the Individual Plaintiffs."

could be helpful in clarifying what procedures would be permissible in an auction to dispose of the assets of the limited partnerships.

The narrow issue presented by this motion is whether defendants had the right to employ proxy voting in order to obtain the approval of the limited partners for the proposed merger or sale of assets. The plaintiffs have moved for summary judgment that the proxy voting procedure was invalid under the Delaware limited partnership statute and/or under the terms of the limited partnership agreement. The defendants have filed a cross-motion for summary judgment on the same issue. This court finds that there are no genuine questions of disputed fact and the issue is ripe for summary judgment.

## DISCUSSION

The Brauvin partnerships are organized under the Delaware Revised Uniform Limited Partnership Act (DRULPA). Del.Code Ann. tit. 6, ch. 17. The statute explicitly permits a partnership agreement to provide for voting by proxy. The section on voting states in pertinent part:

> (b) Subject to § 17–303 of this title, the partnership agreement may grant to all or certain identified limited partners or a specified class or group of the limited partners the right to vote separately or with all or any class or group of the limited partners or the general partners, on any matter. Voting by limited partners may be on a per capita, number, financial interest, class, group or any other basis.

(c) A partnership agreement which grants a right to vote *may* set forth provisions relating to notice of the time, place or purpose of any meeting at which any matter is to be voted on by any limited partners, waiver of any such notice, action by consent without a meeting, the establishment of a record date, quorum requirements, *voting in person or by proxy*, or any other matter with respect to the exercise of any such right to vote.

Del.Code Ann. tit. 6, § 17–302 (emphasis added).[2]

However, the partnership agreements here did not set forth any provisions relating to voting by proxy. Section X[3] of the agreements sets out provisions for voting by the limited partners but is silent on whether voting by proxy is permitted. Section X provides that "[a]ll actions and votes of Limited Partners required or permitted under the terms of this Agreement shall be conducted pursuant to the following terms and provisions" and then specifies the terms and provisions. Among its terms and provisions, Section X provides for voting by written ballots. Section X also provides that ballots must be returned to the General Partners not later than 20 days after the date on which the ballots were "deposited in the regular mails or otherwise delivered" to the limited partners. Ballots received by the general partners after the 20–day period must be considered void.

Section Q(6)[4] of the agreements provides that "[m]eetings of the Limited Part-

2. Effective August 1, 1997, Delaware amended § 17–302 by adding subsection (e), which provides:

> Unless otherwise provided in a partnership agreement, on any matter that is to be voted on by limited partners, the limited partners may take such action without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the limited partners having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting. Unless otherwise provided in a partnership agree-

ment, on any matter that is to be voted on by limited partners, the limited partners may vote in person or by proxy.

3. The provisions for voting rights are set out in Section Y of the limited partnership agreement for Brauvin High Yield Fund, L.P. and Section X of the other three partnership agreements. For convenience, this opinion will refer only to Section X.

4. The provisions for meetings are set out in Section R(6) of the limited partnership agreement for Brauvin High Yield Fund, L.P. and in Section Q(6) of the other three partnership

ners may be called by the General Partners or by Limited Partners holding more than 10% of the then outstanding Units for any matters for which the Limited Partners may vote as set forth in this Agreement." One of the "matters for which the limited partners may vote" is to approve or disapprove the sale or disposition of the partnership's assets. (Section P(2)(e)[5] of the Agreements.) Section Q(6) does not specify any provisions for voting at such meetings; indeed, Section Q(6) does not explicitly state that voting is permitted at such meetings.

Defendants argue that proxy voting is permissible under Section Q(6).[6] They contend that, despite the language in Section X that "[a]ll actions and votes of Limited Partners ... shall be conducted pursuant to" the terms in this section, the provisions for voting set out in Section X do not apply to voting at a limited partners' meeting called under Section Q(6). Instead, defendants claim that Section Q(6) authorizes voting at the meetings, though no procedures for voting at the meetings are set out in Section Q(6). Defendants contend that the general partners

employed proxy voting in connection with the challenged transaction pursuant to a section in the partnership agreement granting the general partners the powers to "[d]o any and all other acts consistent with the objectives of the Partnership as expressed in the Prospectus whether or not expressly authorized herein which the General Partners may deem necessary, desirable, proper and advantageous for the administration of the Partnership." (Section P(2)(o)[7] of the Agreements.)

Although proxy voting may well be desirable and advantageous for the administration of a limited partnership,[8] this court finds that the parties here intended to conduct voting exclusively under the terms of Section X. The partnership agreements explicitly provide that "[a]ll actions and votes of Limited Partners ... shall be conducted pursuant to" the terms in Section X. Section X explicitly provides for voting by written ballot and does not include any provision for voting by proxy. Nowhere do the agreements limit the application of Section X to votes other than those taken at a meeting of limited partners.

---

agreements. For convenience this opinion will refer only to Section Q(6).

5. Section Q(2)(e) of the agreement for Brauvin High Yield Fund, L.P.

6. Defendants and the Individual Plaintiffs also argue that proxy voting is permitted by provisions in the partnership agreements in Section W (Section X of the agreement for Brauvin High Yield Fund, L.P.) that give the General Partners power of attorney for some purposes. However, Section W does not mention proxy voting or even voting generally. Without some indication that the power of attorney provisions were intended to supplement the specific provisions for voting in Section X, this court cannot find authorization in Section W for the voting procedures used here.

7. Section Q(2)(o) of the agreement for Brauvin High Yield Fund, L.P.

8. Indeed, in the absence of the specific—and exclusive—provisions for voting in Section X, this court believes that proxy voting would be permissible. The parties have extensively de-

bated the existence of a common law right to vote by proxy. No cases in any jurisdiction specifically address the right to vote by proxy in a limited partnership when the right is not provided for in the limited partnership agreement. The parties vigorously dispute whether the right to vote by proxy in the corporate context existed at common law. This court notes that proxy voting is now widely used by corporations, and Delaware corporate law explicitly authorizes proxy voting. *See* Del.Code Ann. tit. 8, § 212 (giving corporate stockholders right to vote by proxy). Further, as noted supra note 2, Delaware recently amended § 17–302 of DRULPA to provide that "[u]nless otherwise provided in a partnership agreement, on any matter that is to be voted on by limited partners, the limited partners may vote in person or by proxy." Del.Code Ann. tit. 6, § 17–302(e). If the parties had not agreed on specific provisions for voting and had instead merely specified those matters on which the limited partners could vote, this court would conclude that proxy voting was permissible. However, because of the specific provisions for voting in Section X, this court finds that proxy voting is inconsistent with the partnership agreement.

Defendants contend that Section Q(6) "plainly provides a mechanism for limited partners to vote at limited partner meetings." This court disagrees. While Section Q(6) sets forth provisions for the calling of meetings, it does not contain any provisions for voting, much less for voting by proxy. Defendants claim that this interpretation ignores the presence of the word "vote" in Section Q(6): "Meetings of the Limited Partners may be called by the General partners or by Limited Partners holding more than 10% of the then outstanding Units for any matters for which the Limited Partners may *vote* as set forth in this Agreement." However, this court interprets this provision as merely restricting the universe of matters for which meetings of the limited partners may be called to those matters on which limited partners may vote. It does not provide for alternative procedures for voting at the meetings.

Defendants argue that interpreting the agreement so that Section X alone provides the procedures for voting would render Section Q(6) meaningless. However a reasonable interpretation of the agreement is that Section Q(6) allows the limited partners to call a meeting about certain subjects and Section X sets out the provisions for any votes. Interpreting Section Q(6) so that it provides only for the calling of meetings and not for voting does not render Q(6) meaningless. The limited partners can call a meeting to, in the defendants' own words, "ask questions and to voice their opinions in order to persuade fellow limited partners, so that attending limited partners feel fully informed before casting their votes." (Def. Mem. in Opp. at 18.) The voting however, must be done according to the provisions of Section X.[9] Recognizing that it would be inconvenient and expensive for limited partners to be required to attend a meeting in order to vote, the parties provided in Section X for voting by ballot through the mails.

Further support for this interpretation is found in Section U(5),[10] which involves removal of a general partner by the limited partners. Section U(5) provides in part: "Any removal of a General Partner shall be effective as of the date 60 days following the count of such vote as referred to in Section X." Nowhere else do the partnership agreements specify that a general partner may be removed only by a vote according to the provisions of Section X. Yet, in providing notice of the effective date of a removal, Section U(5) reveals that the parties contemplated that the limited partners could remove a general partner only through a vote under Section X. In other words, the partnership agreements appear to presume that a general partner can be removed only by a vote under Section X. Nowhere in the agreements do the parties indicate that other subjects on which the limited partners may vote—including the sale of all or substantially all of the partnership assets—are to be treated differently from removal of a general partner. Thus, it would seem somewhat incongruous to interpret the partnership agreements so that the limited partners can vote at meetings (and by proxy) under Section Q(6), except when they are voting to remove a general partner, in which case they would have to follow the procedures in Section X.

In light of the clear language in the agreement, this court concludes that votes must be conducted according to the provisions of Section X. Here, the voting did not comply with Section X. Defendants admitted this in their answer to plaintiffs' First Amended Complaint. (Ans. to First Am. Compl. ¶ 57.) The voting used proxies instead of ballots. Even if the proxies could somehow be viewed as ballots for the

---

**9.** It does not appear that it would be inconsistent with Section X for the General Partners to "deliver" the ballots in person to limited partners who attend a meeting and for those limited partners to return the ballots in person.

**10.** Section V(6) of the agreement for Brauvin High Yield Fund, L.P., and Section U(6) of the agreement for Brauvin High Yield Fund, L.P. II.

purposes of Section X, the General Partners counted proxies that were returned more than 20 calendar days after the proxies were sent to the limited partners.

The court is not unsympathetic to the situation faced by the defendants. The defendants wanted to amend the partnership agreement and obtain approval for the proposed transaction. However, the defendants may have been concerned that the ballot procedure specified in Section X would not comply with S.E.C. rules.[11] Therefore, they called for voting at a meeting of the limited partners, with voting also permitted by proxy. Proxy voting allowed the limited partners substantive rights that were similar to those allowed by the ballot procedure under Section X and gave them the additional right of revocation. As with the ballot procedure, the limited partners could vote without having to suffer the expense and inconvenience of attending a meeting of the limited partners. Nevertheless, the voting did not comply with the provisions of Section X. The explicit goal of DRULPA is "to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." Therefore, this court concludes that the proxy voting procedure used to approve the proposed transaction was invalid.

This court is concerned that the unavailability of proxy voting may make it more difficult to sell the assets of the partnerships. Nevertheless, all parties have made clear that they want to see the assets of the partnership sold as soon as practicable, and the court presumes that the parties will work with the Special Master to formulate a voting procedure that will comply with the limited partnership agreements.

## CONCLUSION

The plaintiffs' motion for partial summary judgment [50] is granted. Defendants' cross-motion for summary judgment [86] is denied.

---

11. Of course, the plaintiffs suggest more nefarious reasons for the General Partners' decision to deviate from the voting procedures in Section X.